# Tombigby Railroad Company, use of Shotwell, *v.* Bell *et al.*

A court of law will protect the equitable rights of the assignee of a judgment.

Where a bank assigned a judgment, and placed the amount to the credit of the debtor on
its books, it was held not to be any satisfaction of the same, which would effect the
rights of the assignee.

IN ERROR from the circuit court of the county of Lowndes.

The Tombigby Railroad Company, in 1837, recovered judgment against the defendants in error for forty-two hundred and seven dollars and fifty-nine cents. The execution was levied on the 9th day of January, 1839, and a forthcoming bond taken and forfeited. It appeared that this judgment was subsequently, assigned to Robert Shotwell. At the April term of the circuit court, a motion was made to quash the execution issued in this case, and to enter satisfaction of the judgment, on the ground that more than a year and a day had elapsed from the time of the rendition of the judgment until the execution was issued, and because the judgment had been fully paid off and satisfied to the plaintiffs. The following testimony was introduced in support of the motion :

Charles Walsh stated that he was formerly the cashier of the Tombigby Railroad Company; that, after the judgment was obtained in favor of the company against the defendants, and about the 29th day of June, 1839, the said Robert Shotwell applied to the witness for the purpose of obtaining control of the judgment. Shotwell informed the witness that he (Shotwell) wished to pay to the company the amount due on the judgment, and to take from the company an order upon the attorney of the company to pay over to him (Shotwell) the amount of said judgment, when-

ever collected. Witness stated that Shotwell had paid the amount of the judgment to the company, and that he then gave to Shotwell the order on the attorney of the company, as requested, which is as follows :

To Sam. F. Butterworth, bank attorney. Sir—You will pay over to R. Shotwell, Esq. the proceeds of judgment against Henry Bell *et al.* rendered 9th October, for $4207.59.

Chas. Walsh, Cashier.

June 29, 1839.

[Indorsed.] Accepted; to be paid when collected.

Sam. F. Butterworth.

Witness further stated that he was informed by Shotwell that he made this payment to accommodate Henry Bell, one of the defendants, and at his request. Witness considered at the time that the company had assigned the said judgment to Shotwell, and had given him full power to control and collect the same. Witness stated that he entered upon the books of the company the amount paid by Shotwell to the credit of Henry Bell, who was the maker of the note, which was a satisfaction of the claim so far as the company was concerned.

It was not the intention of either the company or Shotwell to satisfy the judgment, but to transfer to Shotwell the judgment, and give him full power to collect and control the same as he might choose, for his own use and benefit; that Charles E. Taliaferro and Thomas Bell were securities to the note upon which the judgment was founded; and that the bank was not liable over to Shotwell if he failed to collect the money of the makers, as he considered.

Sam. F. Butterworth, a witness, stated that he was the attorney of the company when said judgment was obtained; that he accepted the order; that he was informed by Shotwell, when the order was accepted, that he (Shotwell) wished to control said judgment; witness told Shotwell that the order of the cashier would operate as an assignment of the said judgment to him (Shotwell,) and would give him absolute control of the same. Witness stated it was not the intention of either of the parties to satisfy said judgment, but in good faith to assign the same to Shotwell, that he (Shotwell) might make such disposition of the same as he thought

19*

proper. Execution had issued upon this judgment to the sheriff of Lowndes county, and the company were determined to collect the money forthwith. Shotwell made the advance and took an order upon the attorney of the company, at the request of Henry Bell. Henry Bell gave to Shotwell the following instrument of writing :

"Mr. Robert Shotwell: The Tombigby Railroad Bank obtained judgment against myself and others, in the circuit court of Lowndes county, Mississippi, on the 9th of October, 1839, or thereabouts, for about the sum of four thousand two hundred and seven dollars, on which execution issued and was bonded to the last spring term of said court, which bond was forfeited, and execution on the bond has been issued and is now in the hands of the sheriff of said county. Should you purchase said judgment, or in any manner become interested in the same, I, as principal therein, bind myself to take no steps to obtain redress against said judgment, either in law or equity, but acknowledge it to be just, according to its present tenor and effect.

I am, respectfully, your obedient servant,

H. BELL.

Columbus, 29th June, 1839."

The court sustained the motion, and ordered satisfaction of the judgment to be entered, which opinion was excepted to by Shotwell, and writ of error to this court.

HARRIS, CLAYTON and HARRISON for plaintiff in error.

Originally *choses in action* were not assignable, for the reason that such assignments tended to increase maintenance and litigation, and afforded means to powerful men to purchase rights of action, and thereby to oppress indigent debtors, whose original creditors would not, perhaps, have sued them. Chitty on Bills, page 7.

The courts of equity made the first innovation on this rigid principle of the common law, and gave effect to the assignments of *choses in action*, provided such assignments were made for a sufficient consideration. Chitty on Bills, 8, and note. In England, as early as the fourteenth century, by the *lex mercatoria*, an exception was made in courts of law in favor of the assignment of

Tombigby Rail Road Company, use of Shotwell, *v.* Bell *et al.*

foreign bills of exchange, and in the 17th century inland bills were treated with the same favor.   And in the courts of law generally the equitable interest of the assignee of a *chose in action* seems to have been recognized as far back as the middle of the seventeenth century, when it was determined, "that if an assignee of a *chose in action* have an equity, that equity shall be no exile to the courts of common law."   Chitty on Bills, 8.

Even after the statute of Anne, in England, only three kinds of *choses in action* were made negotiable or assignable, so as to vest the legal interest in the assignee, and thereby enable him to maintain an action in his own name, to wit: foreign and inland bills of exchange and promissory notes.   And even these were not so assignable (unless made payable to bearer) but by indorsement. Hence all other *choses in action*, including bonds, judgments, deeds, and all other writings, could only be assigned so as to vest an equitable interest in the assignee, and the delivery of a promissory note without indorsement by the payee, to this day in England and in this state, vests only an equitable title, which courts of law will notice and protect; and the assignee is compelled to use the name of the payee, for his use, in bringing suit on such note. So vigilant of this equitable interest of the assignee have been the courts of law, that they will not permit the nominal plaintiff, or payee, injuriously to interfere with the right of the assignee, by dismissing his suit, or otherwise controlling it.   Welch *v.* Mandeville, 1 Wheaton, 233; Mandeville *v.* Welch, 5 Wheaton, 277.

And the whole current of modern decisions have followed up and extended the beneficial and equitable principle, that courts of law will take notice of and protect the equitable assignments of *choses in action*, and endeavor to apply to them the rules of equity as far as practicable.   Chitty on Bills, 9; 1 Wheaton, 233; 5 John. R. Eels *v.* Finch, 193 ; 1 Condensed R. L. U. S. 416, note; Corser *v.* Craig, 1 Washington C. C. R. 424.   The question to be determined therefore in all cases where the validity of assignments are disputed, is not whether there has been a technical, formal, transfer executed;  but, what was the design and intention of the parties; for courts of law, following in this respect the doctrines of courts of equity, "will consider that to have been done which was agreed to be done, and which ought to have been done."   Hence

it has been repeatedly decided that "the mere delivery of a *chose
in action* is a sufficient assignment, even if it were a specialty."
Prescott *v.* Hull, 17 John. R. 292; Dunn *v.* Snell *et al.*, 15 Mass.
R. 484–5; Jones *v.* Witter, 13 Mass. R. 307–8; Buggs *v.* Dorr, 19
John. R. 96. And the assignment of a debt secured by mortgage,
and delivery of the mortgage, passes the interest in the mortgage.
Mersereau *v.* Runyan, 11 John. R. 538.

But it is said that a judgment of a court of record can only be
assigned by writing for that purpose under seal. That, admitting
the doctrine that *choses in action* may be assigned so as to vest
an equitable interest in the assignee, still the instrument of trans-
fer or assignment must be of equal solemnity and dignity with
the instrument to be transferred. Why the necessity of this form-
ality? The most technical assignment which could be executed
would only vest an equitable interest, not a legal title in the
assignee, (judgments not being negotiable by statute in this or
any other mode.) No formality of assignment could, therefore
vest more in the assignee than he acquires by the bare agreement
for assignment. Black *v.* Everett, 5 Stuart & Porter, 60.

Again: If the doctrine asserted above were true in relation to
the assignment of judgments, it would follow as a necessary con-
sequence, as is well remarked by the court in Dunn *v.* Snell *et
al.*, 15 Mass. 484–5, that a judgment could never be transferred;
for any assignment that could be made would only amount to an
act *in pais*, which could never equal the dignity of a judgment
of a court of record. Hence, it has been held in New York and
Alabama and Massachusetts, that a judgment may be assigned by
parol or writing without seal. Hartwell *v.* Root, 19 John. R. 344;
Brabant *et al. v.* Ragland *et al.*, 3 Stewart R. 247; Dunn *v.* Snell
*et al.*, 15 Mass. R. 484–5. And in South Carolina it has been de-
termined, that where one advanced money to procure indulgence
for the defendant on a writ of *fi. fa.*, and the payment was made
to the plaintiff's attorney under the express stipulation that the
lien of the judgment should be preserved, and the judgment as-
signed to him, that it was not a payment and extinguishment of
the judgment. Potts *et al. v.* Richardson, Bailey's R. 15.

It is also held in this case, that the cases of Reed *v.* Pruyn *et al.*
7 John. R. 426, and the case of Sherman *v.* Boyce, 15 John. R.

Tombigby Railroad Company, use of Shotwell, *v.* Bell *et al.*

443, being cases of sheriffs, are not applicable to the case decided. That these two cases turn upon the impropriety of permitting sheriffs and their deputies to speculate upon the necessities of debtors and creditors, by purchasing judgments and holding them open, or pressing them as their interest might dictate. The courts have wisely determined to exclude from the ministers of the law a temptation so dangerous to the purity of their official conduct, and so mischievous in its consequences to both debtors and creditors.

We think it then well settled, upon principle and authority, that if one advances his money for the benefit of a defendant in execution, with the understanding of the parties that the judgment is to be kept open for his benefit, and upon the faith of its repayment by the enforcement of the judgment against the defendant, that courts of law, whether the agreement be verbal or written, by parol or under seal, will enforce that understanding, and refuse to treat the judgment as satisfied.

COCKE for defendant.

It is shown by the record that the execution which the court below quashed, and for the which this writ of error is sought to be sustained, issued on a judgment that had been satisfied. 1. By the forfeiture of a forthcoming bond. 2. By the payment of the money to the plaintiffs, by Robert Shotwell, jr. who was a stranger to the cause.

It is shown that the payment which Robert Shotwell made to the bank was under an arrangement between Shotwell and Henry Bell, to relieve Bell; Bell being the principal debtor, all the others being sureties merely, and having nothing to do with that matter. This is certainly a discharge to the sureties. 13 Wend. 375; U. S. *v.* Tillotson, Paine's C. C. R. 305; 3 Wash. C. C. R. 70. And if a discharge as to them, a discharge and satisfaction of this particular debt; for it is believed to be sound law to say that payment by a third person is a satisfaction of the debt, if paid without the consent of the defendant; and if paid with his consent, it is still a satisfaction of that particular debt, and the creation of a new one. Chitty on Bills, 377, 542–3; 8 T. R. 310; 1 T. R. 20; 1 H. Blackstone, 83, 91; 2 Kent's Com. 616, 617; 5 Mason, 400; 1

Starkie R. 237; Jones' on Bailments, 37; 8 J. R. 436; 3 J. R. 434; 4 J. R. 87; 5 Con. R. 603; 10 J. R. 361.

But be this as it may, the arrangement was made with Henry Bell, the principal debtor, without the knowledge or consent of the other sureties. The law will not raise an implied undertaking against a surety in favor of a stranger who may have paid or otherwise adjusted the debt of the principal. 3 Bibb, 208, Briggs' case. Such an authority would place it in the power of the principal and a stranger to defeat the surety of the means of making the property of the principal first liable to pay his debt; and this case is a striking example of the utility of the rule.

In the fourth place, it is contended that whether the court below decided rightfully or wrongfully, whether the debt was in fact paid, that that finding cannot be re-examined in this court on writ of error. If the party had desired it, he could have made up an issue of fact and tried it by jury; or if the court has found the fact wrong, the remedy is not on error to this court, but the party should have obtained a writ of error *coram nobis* in the court below for a jury to have found the facts. Graham on Jurisdiction, 610; 4 Wend. 327; 6 Peters, 49.

In the fifth place, it is seen that the Tombigby Bank is not in fact prosecuting this writ of error. It is obviously done by the said Robert Shotwell. It is placing in this controversy a new, a secret party. Such a party cannot come into this court on writ of error. 1 Ala. Rep, new series, 525.

*Per Curiam.*

We entertain no doubt of the error of the court below, in ordering satisfaction to be entered of the judgment. The rights of equitable assignees will be protected by courts of law, as well as by courts of equity. Shotwell purchased the judgment at the instance of Bell, who paid his money for it. All the parties considered it as a transfer and assignment. It is entirely discreet and proper that the debtor should be consulted by the purchaser of a claim against him. Indeed the law allowing the assignment of bonds, notes, &c., admonishes intended purchasers to ascertain whether the debt is really due, for if it is not, the assignee would not be protected. In the present case, Bell, the principal debtor,

Tombigby Railroad Company, use of Shotwell, *v.* Bell *et al.*

gave an instrument in writing to Robert Shotwell, acknowledging his indebtedness, and bound himself to take no steps to obtain redress against the judgment, either in law or equity. Shotwell then purchased the judgment, and is entitled to have the full benefit of it. When the bank sold the judgment to Shotwell, it was a matter of course for them to credit Bell, and balance his account. They obtained satisfaction by the assignment and transfer of their claim and demand to Shotwell.

The class of cases relied on by the defendants are inapplicable to this case; and the argument of the plaintiffs, on the other hand, we deem conclusive; and refer to the abstract and briefs as prepared by counsel in the cause.

Judgment reversed.